956 F.2d 1166
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mylon L. BUCK, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary, Department of Health and Human
Services, Defendant-Appellee.
 No. 90-35832.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 5, 1992.*
Decided March 10, 1992.
 
 Before CYNTHIA HOLCOMB HALL, O'SCANNLAIN and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Mylon L. Buck's application for disability benefits was denied by the Social Security Administration. The district court affirmed the denial of benefits. Buck timely appealed to this court, and we affirm.
 
 
 3
 * Until December 31, 1985, Buck worked as a family physician. At that time, he quit his practice because the arthritis in his knees made it painful for him to spend time on his feet. He filed an application for disability benefits a year later, and the application was denied. Buck asked for reconsideration and he was again denied benefits. He then requested a hearing before an Administrative Law Judge ("ALJ").
 
 
 4
 Buck was represented by counsel at the hearing and testified on his own behalf. He also presented the testimony of Dr. Peter Cary, his treating physician and business partner, and Dr. Thomas Stipek, a vocational expert hired by Buck's counsel. Vernon Arne, a vocational expert under contract with the Social Security Administration, also testified. The ALJ also had documentary evidence from other doctors before him.
 
 
 5
 The ALJ determined that Buck was not disabled as defined under the Social Security Act. The ALJ found that Buck suffered from "severe degenerative arthritis of the knees ..., severe degenerative disease of the cervical/lumbar spine, controlled hypertension and peptic disease." Nonetheless, the ALJ found that Buck's condition was not on the list of presumptively disabling impairments contained in Social Security regulations, nor was Buck's condition "medically equal" to any such listed impairments. See 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ found, however, that Buck's medical condition would limit him to sedentary work. A family physician's duties are not sedentary, but the ALJ found that Buck could work either as a Health Services Consultant or a Medical Consultant, which are sedentary jobs.
 
 II
 
 6
 "In reviewing the ALJ's denial of disability benefits, we review the findings to make sure the ALJ applied the correct legal standards and review the entire record to insure that the findings are supported by substantial evidence. Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Young v. Sullivan, 911 F.2d 180, 183 (9th Cir.1990) (citations and quotations omitted).
 
 III
 
 7
 Buck raises two issues on appeal. First, he contends that the ALJ's finding that he is not disabled is not supported by substantial evidence. Second, Buck argues that the ALJ's finding that he can work as a Health Services or Medical Consultant is not supported by substantial evidence. We address these issues in turn.
 
 
 8
 * By regulation, the ALJ must determine if the claimant's medical condition is among those on a list of presumptively disabling impairments. 20 C.F.R. § 404.1520(d). See also 20 C.F.R. pt. 404, subpt. P, app. 1 (list). If a claimant's condition is so listed, or if a claimant's condition is equal to a listed impairment, the ALJ must find that the claimant is disabled. 20 C.F.R. § 404.1520(d).
 
 
 9
 Buck argues that the ALJ erred in finding that he was not disabled, because the record indicates that he suffers from a condition on the list of presumptively disabling impairments, namely, "[a]rthritis of a major weight-bearing joint." See 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.03. Alternatively, Buck urges that his condition is at least medically equivalent to "arthritis of a major weight-bearing joint."
 
 
 10
 We conclude that substantial evidence supports the ALJ's express finding that Buck "does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, subpart P." "[A] claimant may have a listed impairment without being presumptively disabled if the claimant's impairment is not as severe as required under the findings for that impairment." Young, 911 F.2d at 184. Under the findings for "arthritis of a major weight-bearing joint," the regulations state that the claimant must have a "history of persistent joint pain and stiffness with signs of marked limitation of motion or abnormal motion." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.03. While Buck has experienced persistent joint pain, there was substantial evidence upon which to find that Buck has not suffered "marked limitation of motion or abnormal motion" in his arthritic knees. Using the methodology set forth by regulation, Buck's right knee[1] motion is only 12.5 to 14 percent below average. Buck points to no evidence of abnormal motion. On this evidence, a reasonable mind could conclude that Buck's condition is not as severe as required under the findings for the impairment "arthritis of a major weight-bearing joint." Consideration of Buck's other health problems, such as his spinal degeneration, does not mandate a different result.
 
 B
 
 11
 Buck argues that substantial evidence does not support the ALJ's finding that he could work as a consultant, both because the vocational expert upon which the ALJ relied in so finding was not credible, and because there is no realistic chance that Buck can actually work as a Health Services Consultant or a Medical Consultant.
 
 
 12
 The contract vocational expert Arne testified that Buck could work as a Health Services Consultant or a Medical Consultant. This was the evidence supporting the ALJ's finding that Buck could work at these positions. Buck argues that Arne's testimony and written report are plagued by "gaps" and "inconsistencies," that as a consequence Arne's testimony cannot be credited, and that, without Arne's testimony, the ALJ's finding that Buck could work as a consultant is not supported by substantial evidence.
 
 
 13
 The ALJ, however, chose to credit the testimony of Arne, and we give great deference to his credibility findings. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989). Here, the ALJ gave a detailed and thorough explanation for why he was accepting the testimony of Arne over the vocational expert hired by Buck's attorney. Such a finding is fully justified, for, viewing the record as a whole, the alleged gaps and inconsistencies cited by Buck are either nonexistent or insubstantial.
 
 
 14
 Buck notes that Arne testified that, "based on the physical limitations diagnosed by Dr. Cary, plaintiff could only work at a 'sub-sedentary' level," while the consultant positions recommended by Arne were sedentary. But there is no inconsistency here. The ALJ expressly declined to fully credit Dr. Cary's medical opinion because he was Buck's business partner. Thus, it may be that based on Dr. Cary's discredited diagnosis, Buck could only work at a sub-sedentary level, but Arne's conclusions about the appropriateness of the consulting positions were based on other medical opinions.
 
 
 15
 Similarly, there is no inconsistency in Arne's grouping of the position of Medical Claims Adjuster with the consultant positions as all being sedentary, and then stating that Buck could not work as a Medical Claims Adjuster. As Arne explained, although all three jobs are sedentary, the Adjuster position would require Buck to work standard, eight-hour days, while as a consultant Buck could work "on a[n] as-needed or part-time level," consistent with his limited physical abilities.
 
 
 16
 Further, the fact that the positions of Health Services Consultant and Medical Consultant are not listed in the Dictionary of Occupational Titles, but rather are subcategories of positions such as "Consultant," that are listed in the Dictionary, does not render Arne's testimony incredible. In sum, the ALJ's reliance on Arne's testimony was not misplaced, and accordingly the ALJ's findings based on such testimony are supported by substantial evidence.
 
 
 17
 Buck also contends that he cannot in fact work as a consultant, because employers generally prefer to hire actively practicing physicians for such positions. The vocational expert who the ALJ found more credible, Arne, testified otherwise. Indeed, the record indicates that one of the consulting doctors in this very case is retired from active practice. Further, even if it were the case that employers uniformly preferred to hire actively practicing physicians for their consulting positions, "Congress has explicitly determined that it is the existence of jobs that is essential, and that an administrative law judge is not required to consider the hiring practices of employers, or whether a claimant could actually obtain work if he applied for it." Martinez v. Heckler, 807 F.2d 771, 774-75 (9th Cir.1986) (emphasis in original) (citing 42 U.S.C. § 423(d)(2)).
 
 IV
 
 18
 The findings of the ALJ were supported by substantial evidence. Accordingly, the judgment of the district court is
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3
 
 
 [1]
 Buck's left knee motion is within the normal range